**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GLENN HOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | NO: 1:20-cv-02662-WMR |
| | ) | |
| | ) | |
| VICTOR HILL, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## ORDER

This civil rights case is before the Court on Defendant Victor Hill's Motion for Summary Judgment. [Doc. 64]. Upon consideration of the parties' arguments, applicable law, and all appropriate matters of record, and after oral argument on October 15, 2023, the Court DENIES the Motion for the reasons set forth below.

## I.    Background

On April 18, 2020, Plaintiff became involved in a business dispute with a Clayton County Sheriff's deputy related to the performance of landscaping services at the deputy's home in Butts County, Georgia. The dispute escalated to the two cursing at each other, threats of violence from Plaintiff, the police being called, and Plaintiff being asked to leave the deputy's property. (Doc. 64-

2 at 1–2, ¶¶ 1–3; Doc. 65-1 at 1, ¶¶ 1–3). After learning of the dispute, Hill called Plaintiff on April 23, 2020.[1] (Doc. 65-4 at 4–5, Depo. transcript pp. 141–143). During the call, Hill identified himself as the Clayton County Sheriff and told Plaintiff to leave his deputy alone. (*Id*.) Among other statements, including profanities between the parties, Plaintiff replied that Hill should tell his deputy to pay his bill and to "go fuck yourself." (*Id*.) Purportedly because Plaintiff was unsure whether the caller was actually Hill, Plaintiff used Facetime to call Hill back several times until Hill answered and removed the mask he was wearing. (*Id*. at 6–7, Depo. transcript pp. 149–151). After the Facetime calls, Hill texted Plaintiff warning him not to call or text anymore or else he would have him arrested. (*Id*. at 8, Depo transcript pp. 154–155). Plaintiff responded via text, "so this is Victor Hill correct." (*Id*.)

Although Plaintiff did not call or text Hill again, Hill had a Clayton County Sheriff's deputy swear out an arrest warrant against Plaintiff for harassing communications. (Doc. 65-5 at 1, Trial Transcript pp. 1430-1431; Doc. 64-4 at 11–12, Trial Transcript pp. 1944–45). Shortly thereafter, Plaintiff was informed that Hill had a warrant out for his arrest and that he had been asked to turn himself in to the Clayton County Jail. (Doc. 64-4 at 12, Trial

---

[1] Why Sheriff Hill involved himself in this dispute is a mystery. Neither the Plaintiff nor the deputy even lived in Clayton County.

Transcript p. 1944; Doc. 64-2 at 13 ¶¶43-44; Doc. 65-1 at 6 ¶¶43-44).  When Plaintiff failed to respond Hill texted him again, stating "My Deputies are actively looking for you.  We have not and will not agree for you to turn yourself in when you want to.  Turn yourself in today." (Doc. 65-4 at 8, Depo Transcript p. 157; Doc. 64-3 at 40). Meanwhile, Hill had sent his heavily armed fugitive squad to Butts County in an attempt to arrest Plaintiff on the misdemeanor arrest warrant. (Doc. 64-2 at 12 ¶45; Doc. 65-1 at 6 ¶45; Doc. 64-4 at 12, Trial Transcript p. 1944; Doc. 64-3 at 28, Depo. Transcript p. 161).

On April 27, 2020, Plaintiff turned himself to the Clayton County Jail after having retained a criminal defense attorney and made other arrangements.  (Doc. 64-3 at 30–31, Depo. Transcript pp. 166–67).  Clayton County Jail records indicate that Plaintiff was unarmed, not under the influence of drugs, and offered no resistance. (Doc. 65-3).  Surveillance footage from the booking area shows Plaintiff interacting with jail personnel amicably, waiting patiently, and being cooperative and compliant for over forty-five minutes before Hill arrived and confronted him.  (Doc. 66, Intake Video 1 and Intake Video 2).  Nonetheless, upon Hill's arrival, Plaintiff was immediately surrounded by law enforcement personnel who forcefully placed him in a restraint chair at Hill's direction where he remained for approximately six hours.  (*Id*.; Doc. 65-5 at 3, Trial Transcript p. 1467). Among other injuries,

Howell suffered injuries to his wrists and cervical spine as a result of his punitive restraint. (Doc. 65-4 at 9–12, Depo. Transcript pp. 218–230).

In addition to ordering Howell to a restraint chair, Hill ordered Howell be placed on suicide watch, despite Howell never being suicidal. (Doc. 64-2 at 17–18 ¶¶64–65 and 68; Doc. 65-1 at 10–11 ¶¶64–65 and 68; Doc. 65-3). Plaintiff bonded out the following day after having seemingly remained compliant and non-threatening during his incarceration at the Clayton County Jail.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative

evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.   Discussion

The Defendant argues that he is entitled to qualified immunity on Plaintiff's 14th Amendment § 1983 claim for excessive force.  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person should have known." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)) (internal quotations omitted). The purpose of qualified immunity is to allow government officials to perform their discretionary functions without "the fear of personal liability or harassing litigation[.]" *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). The doctrine protects from suit "all but the plainly incompetent or one who is knowingly violating federal law." *Id.* (citing *Lee*, 284 F.3d at 1194).

The first step of the qualified immunity inquiry is to determine whether the government official was "acting within the scope of his discretionary

authority when the allegedly wrongful acts occurred." *Gilmore*, 738 F.3d at 272 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1250 (11th Cir. 2012) (citation and internal quotations omitted)). It is undisputed in this case that Sheriff Hill was acting within the scope of his discretionary authority as a law enforcement officer when he ordered Plaintiff strapped into a restraint chair.  The burden therefore shifts to the Plaintiff to establish (1) that Hill's allegedly wrongful conduct violated a constitutional right and (2) that the right at issue was clearly established at the time of the alleged misconduct. *Id*. (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Plaintiff argues that Sheriff Hill violated his 14th Amendment rights by punitively restraining Plaintiff to a chair for approximately 6 hours, despite his compliant and non-threatening behavior.

### 1.  Use of Force

A pre-trial detainee alleging that his rights were violated through the use of excessive force must show that the force used was "objectively unreasonable" under the circumstances. *Kingsley v. Hendrickson*, 576 U.S. 389, 391-92, (2015).  To determine whether the force used against a pre-trial detainee was objectively unreasonable and therefore excessive, the Eleventh Circuit considers a non-exhaustive list of six factors developed in *Kingsley*:

> [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of

the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

*Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173 (11th Cir. 2020) (citing *Kingsley*, 576 U.S. at 397).  The factors in this case weigh in favor of a finding that Sheriff Hill's used of force was objectively unreasonable.

First, surveillance footage depicting Plaintiff being compliant, non-threatening, and moving freely uncuffed during the approximately 45-minute period prior to Sheriff Hill's arrival belies Sheriff Hill's argument that there was a need for the use of force whatsoever.  And, when Plaintiff was placed in the restraint chair for an approximately six-hour period, he was strapped so tightly that he suffered wounds to his wrists and his hands went numb.  Under these circumstances, the use of force seems grossly disproportionate to any purported need for the use of force.

In regard to the second and third factors, Plaintiff suffered lacerations to his wrists, for which he sought medical treatment. Further, given the extent of Plaintiff's injuries and the length of time he was left strapped to the restraint chair, a reasonable jury could conclude that Defendant made no effort to temper or to limit the amount of force that was used.

As to the fourth and fifth factors, non-withstanding Plaintiff's hostile and threatening pre-confinement language, there was no need for Plaintiff to be

strapped to a restraint chair because Plaintiff did not pose a threat during his confinement.   Instead, Plaintiff voluntarily turned himself in and was fully compliant with the numerous jailers he interacted with, including Sheriff Hill. Simply placing Plaintiff in a holding cell, as was done prior to Sheriff Hill's arrival, would have been a reasonable alternative.   As such, factors four and five weigh in favor of a finding of excessive force.

Under binding Eleventh Circuit precedent, "[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting— whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive." *Piazza v. Jefferson Cnty.,* 923 F.3d 947 (11th Cir. 2019) (quoting *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008).; see also *Ort v. White*, 813 F.2d 318, 327 (11th Cir. 1987) ("A [F]ourteenth [A]mendment violation occurs ... where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased"). Based on the foregoing, the Court finds that a reasonable jury could conclude that the amount of force used at the direction of Sheriff Hill was objectively unreasonable under the circumstances and, therefore, excessive in violation of the Fourteenth Amendment's due process clause.

**2. Whether the law governing the circumstances was clearly established.**

A plaintiff can demonstrate that a constitutional right was clearly established by several different means:

> *First*, the plaintiff can point to a materially similar case decided at the time of the relevant conduct by the Supreme Court, the Eleventh Circuit, or the relevant state supreme court....The prior case law need not be directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Second*, the plaintiff can identify a broader, clearly established principle that should govern the novel facts of the situation. *Third*, the plaintiff can show that the conduct at issue so obviously violated the Constitution that prior case law is unnecessary.

*J W ex rel. Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1259-60 (11th Cir. 2018) (internal quotation marks and citations omitted; emphasis supplied). To demonstrate that a right was "clearly established" by materially similar precedent, Plaintiff must point to a precedent wherein "the factual scenario that the official faced" is not "fairly distinguishable from the circumstances facing a government official in a previous case." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). (citation and internal quotation marks omitted).  Here, Plaintiff points to and the Court finds the unpublished opinion in *Shuford v. Conway*, 666 F. App'x 811 (11th Cir. 2016) as being a materially similar case.

The Court notes, however, that *Shuford* is an unpublished opinion and that the Court may only look to binding authority as "materially similar precedent" in determining whether the law governing the circumstances was clearly established at the time of the alleged violation. See *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) ("Our Court looks only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation"). However, the issue of whether *Shuford*'s unpublished status renders it ineligible for use as "materially similar" precedent is not dispositive here. As demonstrated in *Shuford*, the second method for showing that the law was "clearly established" also applies to facts of the instant case.

Under the second method, a broad statement of principle within the Constitution, a statute, or case law can provide the basis for determining that a constitutional right is "clearly established." *J W ex rel. Williams*, 904 F.3d at 1259. The Eleventh Circuit has "long made clear that '[p]rison officials step over the line of constitutionally permissible conduct if they use more force than is reasonably necessary in an existing situation.'" *Shuford*, 666 F. App'x at 817 (citing *Ort v. White*, 813 F.2d 318, 325 (11th Cir. 1987)). See also *Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("When jailers continue to use

substantial force against a prisoner who has clearly stopped resisting—
whether because he has decided to become compliant, he has been subdued, or
he is otherwise incapacitated—that use of force is excessive"); *Piazza v.
Jefferson Cty., Alabama*, 923 F.3d 947, 953 (11th Cir. 2019) ("[O]ur decisions
make one thing clear: 'Once a prisoner has stopped resisting there is no longer
a need for force, so the use of force thereafter is disproportionate to the need'")
(citing *Danley*, 540 F.3d at 1309) (emphasis added).

Furthermore, in *Piazza*, a case involving the question of whether the
defendant was on notice that the use of a taser constituted force, the court held:

> To be clear, it is no answer to say that *Danley* involved pepper spray,
> *Skrtich* kicks and punches, *Williams* four-point restraints, etc.—and
> that none of those cases concerned the use of a taser specifically. It's true,
> of course, that to defeat qualified immunity a rule must be specific
> enough that an act's unlawfulness "follow[s] immediately from the
> conclusion that the rule was firmly established," *Wesby*, 138 S. Ct. at 590
> (citation omitted). But we have never suggested that the longstanding
> prohibition on a jail officer's use of force on an incapacitated detainee
> turns on as fine a point as the particular weapon deployed.

*Piazza*, 923 F.3d 947 (11th Cir. 2019). Accordingly, the Court finds that the law
was clearly established and that Sheriff Hill was on notice that the use of force,
including the use of a restraint chair, against a non-resisting pretrial was
constitutional violation.

In this case, Plaintiff has presented evidence that the Defendant ordered him from a holding cell at a time when he was not resisting or displaying any sort of threatening behavior and, despite the fact that there was no need to do so, Defendant employed substantial force against Plaintiff by having him tightly restrained to a chair for approximately six hours. Applying the principles from the long-standing precedent referenced above and viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has demonstrated a triable claim on a violation of clearly established law sufficient to defeat qualified immunity.   Qualified Immunity is therefore denied.

### IV. Conclusion

For the reasons stated above, it is hereby ORDERED that Defendant Victor Hill's Motion for Summary Judgment [Doc. 64] is **DENIED**.


SO ORDERED, this 27th day of November, 2023.


_William M. Ray II_
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE